In re SCHMIDT.

(District Court, W. D. Pennsylvania.   August 1, 1913.)

No. 8,088.

ALIENS (§ 68*)—NATURALIZATION—CONSTRUCTION OF STATUTE.

The certificate from the Department of Commerce and Labor, which an applicant for naturalization is required to file with his petition by Naturalization Act June 29, 1906, c. 3592, § 4, 34 Stat. 596 (U. S. Comp. St. Supp. 1911, p. 529), showing the date, place, and manner of his arrival, is not necessarily the same certificate which it is provided by section 1 (U. S. Comp. St. Supp. 1911, p. 124) shall be issued to an immigrant on his registry by the Commissioner of Immigration, nor need it be made up from the record of his registry, since he may be admitted to citizenship on proof of the requisite facts, although he did not come into the United States through a regular port of entry.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145; Dec. Dig. § 68.*]

In the matter of the petition of Paul Hermann Schmidt for naturalization.   Petition granted.

W. M. Ragsdale, of Pittsburgh, Pa., for the United States.

ORR, District Judge.   On January 11, 1913, the petitioner filed his petition for naturalization, and attached to his petition a certificate in the form following:

"Form 526.   Certificate of Arrival—For Naturalization Purposes.

"(For use of aliens arriving in United States after June 29th, 1906.   To be issued immediately prior to petitioning for naturalization.)

"Department of Commerce and Labor,
                "Immigration Service.

                                        "Port of Pittsburgh, Pa., 12–31–12.

"The immigration records at this port show the following as to the alien named below:
"Name of alien:  Paul Hermann Schmidt.
"Date of arrival:  November 15, 1906.
"Name of vessel:  Kaiser Wilhelm II.   Line, N. G. L.
      "[Over]                                        W. W. Sibray,
                                . "[Title]   U. S. Immigrant Inspector."

Indorsement:

"The above certificate does not purport to verify the landing or admission of the alien described therein, but investigation indicates that according to the records of the consul general of Germany, New York, one Paul Schmidt deserted the steamship Kaiser Wilhelm II on November 15, 1906.   He therefore entered without inspection under the immigration laws, and no registry was made at the time of his arrival.   It is granted solely for the purpose of allowing the alien to file a petition, so that the court in which petition is filed may judicially determine whether the certificate of arrival required by section 4 must be made up from the registration prescribed in section 1 of the Naturalization Act.   This point should be brought to the attention of the court in every case in which it is used."

At the hearing of the petition it appeared that the applicant was born at Gersdorf, Germany, on May 12, 1888; that he came to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

this country November 15, 1906; that he was 18 years of age at the time he left his native country; that by reason of his age it was impossible for him to secure a passport; that he secured employment in a kitchen of the steamship Kaiser Wilhelm II; that he deserted that steamer in the harbor at New York; and that he was not inspected by the immigration authorities.

The government contends that the certificate attached to the petition of the applicant was not a sufficient compliance with the requirements of section 4 of the act of June 29, 1906, commonly known as the Naturalization Act. As there are several cases in which a similar certificate has been presented, this court deems it proper to express its reasons why the contention of the government cannot prevail. The only question is whether or not such a certificate is in compliance with the law.

Section 1 of the Naturalization Act provides in part as follows:

"That it shall be the duty of the said bureau to provide, for use at the various immigration stations throughout the United States, books of record, wherein the commissioners of immigration shall cause a registry to be made in the case of each alien arriving in the United States from and after the passage of this act of the name, age, occupation, personal description (including height, complexion, color of hair and eyes), the place of birth, the last residence, the intended place of residence in the United States, and the date of arrival of said alien, and, if entered through a port, the name of the vessel in which he comes. And it shall be the duty of said commissioners of immigration to cause to be granted to such alien a certificate of such registry, with the particulars thereof."

There is in that language no duty imposed upon the alien, but rather upon the commissioners of immigration. There is no provision in the act requiring the alien to take the certificate at the hand of the commissioners and to preserve the same.

In section 4 of the same act, after provisions as to residence and as to the form and contents of the petition for citizenship and its verification by witnesses, there is this provision:

"At the time of filing his petition there shall be filed with the clerk of the court a certificate from the Department of Commerce and Labor, if the petitioner arrived in the United States after the passage of this act, stating the date, place, and manner of his arrival in the United States, and the declaration of intention of such petitioner, which certificate and declaration shall be attached to and made part of said petition."

There is no provision in the act that the certificate required to be attached to the petition is the same certificate of registry that the commissioners of immigration should cause to be given to the alien. The certificate to be filed with the petition for naturalization provides only that it shall set forth the "date, place, and manner of his arrival." The certificate of registry would include, in addition, occupation, personal description in detail, place of birth, last place of residence, and the intended place of residence in the United States.

The government contends that it was the intention of Congress, in requiring a certificate of arrival into the United States, and in establishing a means of providing said certificate to prevent abuses in the administration of the old law by requiring at least a five years' registration before a petition for naturalization should be filed. It

is contended that the certificate of arrival in the United States is the evidence to the court of the period of residence required before citizenship may be conferred upon the alien.

We cannot agree with that contention. It is interesting to note that the certificate of arrival required by the act of June 29, 1906, is not wholly new. On April 14, 1802, Congress passed a naturalization law (Act April 14, 1802, c. 28, 2 Stat. 153) providing, among other things, for the registration of aliens who contemplate naturalization, a certificate of which registration could be used as "evidence of the time of his arrival within the United States." The material provisions of that act are as follows:

"Sec. 2. * * * All free white persons, being aliens, who may arrive in the United States after the passing of this act, shall, in order to become citizens of the United States, make registry, and obtain certificates, in the following manner, to wit: Every person desirous of being naturalized shall * * * make report of himself * * * to the clerk of the District Court where such alien or aliens shall arrive, * * * and such report shall ascertain the name, birthplace, age, nation and allegiance of each alien, * * * and it shall be the duty of such clerk * * * to record the same in his office, and to grant to the person making such report * * * a certificate under his hand and seal, * * * and such certificate shall be exhibited to the court by every alien who may arrive in the United States, after the passing of this act, on his application to be naturalized, as evidence of the time of his arrival within the United States."

It is curious to note that that act of 1802 came under the notice of the great Chief Justice Marshall in Spratt v. Spratt, 4 Pet. 393–405 (7 L. Ed. 897). He says:

"As James Spratt arrived within the United States after the passage of the act of 1802, he is embraced by the second section of that act, and was under the necessity of reporting himself to the clerk, as that section requires. Must this report be made five years before he can be admitted as a citizen? The law does not in terms require it. The third condition of the first section provides 'that the court admitting such alien shall be satisfied that he has resided within the United States five years at least, but does not prescribe the testimony which shall be satisfactory. This section is in force when James Spratt was admitted to become a citizen, and was applicable to his case. But the second section requires, in addition, that he shall report himself in the manner prescribed by that section, and requires that such report shall be exhibited, 'on his application to be naturalized, as evidence of the time of his arrival within the United States.' The law does not say that this report shall be the sole evidence, nor does it require that the alien shall report himself within any limited time after his arrival. Five years may intervene between his arrival and report, and yet the report will be valid. The report is undoubtedly conclusive evidence of the arrival, and must be so received by the court; but if the law intended to make it the only admissible evidence, and to exclude the proof which had been held sufficient, that intention ought to have been expressed. Yet the inference is very strong, from the language of the act, that the time of arrival, must be proved by this report, and that a court, about to admit an alien to the rights of citizenship, ought to require its production."

While the language just quoted from the opinion in that case was collateral to the issue there decided, it is illuminating as revealing the attitude of the constructive jurist toward the naturalization laws.

It is not for the courts to embody in an act of Congress something which is not clearly to be found therein. The applicant in the case at bar, like James Spratt, was under the necessity of procur-

ing a certificate. He was under the necessity of reporting himself to the department, while James Spratt was under the necessity of reporting himself to the clerk. He can no more be required to permit five years to elapse between his report to the department than James Spratt was required to make his report five years before he was admitted to citizenship. The real reason is that the act does not require it. That the department might desire to create a uniformity in matters wherein the act of Congress is deficient is easily understood, but it is beyond their power in this instance.

It does not seem to us that the naturalization laws and the immigration laws are so interdependent that, because an alien has entered this country in violation of the immigration laws, he should not be admitted to citizenship by virtue of the naturalization laws after the proper judicial action contemplated by the latter has been had. The immigration laws by their provisions recognize that immigrants come to the United States other than through a port of entry or in the regular channel provided by said laws and the general rules of the department. This is plain from the provision that within a period of three years they may be deported. That a man may have come into this country in violation of the immigration laws is a fact perhaps to be considered by the court in reaching the conclusions required before the alien may be admitted to citizenship; but it is not a ground for his exclusion from citizenship, else it would have been so provided in the acts of Congress.

Citizenship is granted by a court of record after a hearing, and the court must be satisfied as to the residence of the alien, as to his good moral character, as to his attachment to the principles of the Constitution and to his being well disposed to the good order and happiness of the United States.

Our attention has been called to several cases where this same matter has been considered. One is the Matter of Dell Hayes Laverne Page, by Judge Tuttle, of the District Court of the United States for the Eastern District of Michigan, under date of April 14th last, in which he admitted to citizenship a man who was not registered at the time of his entrance to the country and who presented a nunc pro tunc certificate.

Judge Day, of the District Court for the Northern District of Ohio, in the matter of the application for naturalization of Edward Hollo, seems to have reached a different conclusion. Without considering his opinion in detail, with which we are at variance, we have noted that he uses the following language:

"The certificate offered by the applicant is simply a record of a statement made by him. It is not verified, and it is at most a formal record of what he said to the immigration authorities."

The learned judge seems to have overlooked the fact that the certificate need not be based upon the statement of the applicant alone, but upon the records of the department, or, if they are deficient, then upon such other evidence as may satisfy the department of the truth of the facts stated in the certificate.

We are satisfied that the applicant in the present case, and the other applicants in this court, who have filed similar certificates, have rightfully procured their certificates from the department according to law, and that because they have complied with the law in all respects, and have satisfied the court as to their qualifications, they should be admitted to citizenship.

I am authorized to state that Judge YOUNG concurs in this opinion.