In re LINKLATER.

(District Court, N. D. California, Second Division. January 26, 1925.)

No. 6050.

**1. Aliens ⊕69—Entry of seaman supporting application by nunc pro tunc certificate of arrival presumed lawful.**

On application of alien seaman for admission to citizenship supported by a nunc pro tunc certificate of arrival issued under Act June 29, 1906, § 4, subd. 2 (Comp. St. § 4352), and affidavit and discharges showing more than three years' honorable service on American merchant vessels, it will be assumed that petitioner's examination showed a lawful entry.

**2. Aliens ⊕66—Alien seaman having served more than three years in merchant marine and presenting proper certificate of arrival held entitled to admission to citizenship.**

An alien seaman who has honorably served for more than three years in the American merchant marine and presents a nunc pro tunc certificate of arrival required by Naturalization Act June 29, 1906, § 4 (Comp. St. § 4352), is entitled to become a citizen under subdivisions 7 and 8, as added to section 4 by Act May 9, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4352), regardless of whether his original entry was legal or illegal, notwithstanding provisions of Act Feb. 5, 1917, § 34 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼s).

**3. Aliens ⊕66—Seaman's service in American merchant marine need not be subsequent to lawful entry and declaration of intention to warrant naturalization.**

Under Naturalization Act June 29, 1906, authorizing nunc pro tunc certificate of arrival to alien seaman, the three years' honorable service in American merchant marine required by section 4, subd. 7, as added by Act May 9, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4352), as prerequisite to naturalization, need not be shown to be subsequent to alien's lawful entry and to filing of his declaration of intention.

**4. Statutes ⊕189—Court bound by literal reading if statute is clear.**

The courts are bound by a literal reading if statute is clear.

**5. Statutes ⊕219—Administrative construction may be considered, though not conclusive.**

The settled practice of the administrative officers charged with the enforcement of a statute may be considered as evidence of a correct

interpretation, though not entitled to prevail against specific statutory provision.

**6. Aliens ⬤➾68—Naturalization examiner without judicial powers and without power to prevent any person from filing petition for naturalization; "master."**

.The powers of an examiner of the naturalization department are administrative and not judicial in any sense, and he is not a "master," nor has he power or authority to prevent any man from filing his petition for naturalization under any circumstances.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Master.]

In the matter of the application of Edward Linklater to be naturalized a citizen of the United States of America. Decree admitting petitioner to citizenship.

M. R. Bevington, District Director for Naturalization, of San Francisco, Cal., for United States.

John H. Ankele, Jr., of San Francisco, Cal., amicus curiæ.

PARTRIDGE, District Judge. This is an application to be admitted as a citizen. The applicant filed his petition September 5, 1924, supported by a nunc pro tunc certificate of arrival dated April 29, 1924. This certificate of arrival gives the date of arrival as August 9, 1920. Petitioner exhibited discharges showing over three years' honorable service on American merchant vessels; service commencing August 18, 1920, and ending August 8, 1924.

[1] The Chief Naturalization Examiner submits that there are involved four distinct questions of law, upon none of which is there a definite holding by any court, nor anything, indeed, which can really be construed as authority. The first question propounded is: "Can an alien who is illegally in the United States under the immigration law be treated as lawfully here under the naturalization laws?" Strictly speaking, however, it cannot be said that Linklater is illegally in the United States under the immigration laws. Is it to be assumed that the Secretary of Labor would issue a nunc pro tunc certificate to an alien who was illegally landed? On the contrary, the fair assumption is that his examination showed a lawful entrance into the country. This assumption finds further support in the affidavit attached to the petition, in which Linklater makes oath that upon his arrival he was examined by the immigration authorities, and permitted to land in pursuit of his calling, and that he shipped continuously on American merchant vessels from the time of his first arrival to the present. The contention of the naturalization bureau, therefore, that he was a "deserting seaman," has no support in the record, and is negatived both by the presumption which attaches to the act of the department in issuing his certificate, as well as the express averments of his oath.

Neither can it be said that the very question asked has received no judicial consideration.

[2] The question of a nunc pro tunc certificate was considered by Judge Tuttle of the Eastern District of Michigan in Re Page, 206 F. 1004. It was held that the certificate, although issued long after the arrival, was sufficient to satisfy the statute; the court using this language:

"When the Department of Commerce and Labor see fit to issue a certificate showing the entry of an alien, they ought not to be heard to say in opposition to the admission of the alien to citizenship that, while the certificate is genuine and states the truth, the court ought not to give any weight to it because the official issuing it did not have proper proof before him."

Judge Orr of the Western District of Pennsylvania held, in Re Schmidt, 207 F. 678, that even where the certificate of arrival shows on its face that the petitioner was a deserter from a ship on his arrival, all that was required to be included in the certificate was the "date, place and manner of his arrival," saying:

"It does not seem to us that the naturalization laws and the immigration laws are so interdependent that, because an alien has entered this country in violation of the immigration laws, he should not be admitted to citizenship by virtue of the naturalization laws after the proper judicial action contemplated by the latter has been had. The immigration laws by their provisions recognize that immigrants come to the United States other than through a port of entry or in the regular channel provided by said laws and the general rules of the department. This is plain from the provision that within a period of three years they may be deported. That a man may have come into this country in violation of the immigration laws is a fact perhaps to be considered by the court in reaching the conclusions required before the alien may be admitted to citizenship; but it is not a ground for his exclusion from citizenship, else it would have been so provided in the acts of Congress."

So, Judge Thompson of the Eastern District of Pennsylvania, in Re McPhee, 209

F. 143, concurs in the reasoning and holding of Judge Orr.

In re Schmidt is also approved by Judge Chatfield of the Eastern District of New York in Re Pick, 209 F. 999.

Prior to the Act of June 29, 1906 (34 Stat. 595), the naturalization laws did not concern themselves at all about how a person got into the country. Practically all foreigners (except, of course, Chinese) were free to enter as they chose, and five years' residence was in practical effect all that was required for citizenship. However, so many frauds in naturalization were practiced, that a new statute was passed, subdivision 2 of section 4 (Comp. St. § 4352), which provides:

"At the time of filing his petition there shall be filed with the clerk of the court a certificate from the Department of Commerce and Labor, if the petitioner arrives in the United States after the passage of this act, stating the date, place, and manner of his arrival in the United States. * * * "

This subdivision received an authoritative interpretation in U. S. v. Ness, 245 U. S. 319, 38 S. Ct. 118, 62 L. Ed. 321, where the Supreme Court points out the four purposes of the certificate as follows:

" * * * Section 6 prohibits courts from taking final action upon any petition until ninety days after such notice has been given. That period is provided so that the examiners of the Bureau of Naturalization and others may have opportunity for adequately investigating whether reasons exist for denial of the petition. The certificate of arrival is the natural starting point for this investigation. It aids in ascertaining (a) whether the petitioner was within any of the classes of aliens who are excluded from admission by sections 2 and 38 of the Immigration Act of February 20, 1907 [34 Stat. at L. 898, chap. 1134, Comp. Stat. 1916, ss. 4344, 4387]; (b) whether he is among those who are excluded from naturalization under section 7 of the Naturalization Act—for political beliefs or practices; (c) whether he is the same person whose declaration of intention to become a citizen is also attached to the petition under section 4, subdivision second; (d) whether the minimum period of five years' continuous residence prescribed by section 4, subdivision 4, has been complied with. The certificate of arrival is in practice deemed so important that in the regulations issued by the Secretary of Labor under section 28 'for properly carrying into execution the

various provisions' of the act, the clerk of court is advised that he 'should not commence the execution of the petition until he has received the certificate of arrival.' "

It is contended by the petitioner that the Supreme Court did not consider that one of the purposes of the certificate was to prevent the naturalization of persons illegally entered. The first of Mr. Justice Brandeis' subdivisions, however, seems to have had that very thing in mind. But it is one thing to say that the certificate would "aid in ascertaining" that fact, and to say that that fact, by very virtue of its existence, would prevent naturalization in all cases, and still less to argue that a seaman who landed for the purpose of shipping on American vessels was illegally entered so as to prevent him from becoming an American citizen.

Now, the Act of February 5, 1917, § 34 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼s), provides:

"Any alien seaman who shall land in a port of the United States contrary to the provisions of this act shall be deemed to be unlawfully in the United States, and shall, at any time within three years thereafter, upon the warrant of the Secretary of Labor, be taken into custody and brought before a board of special inquiry for examination as to his qualifications for admission to the United States, and if not admitted said alien seaman shall be deported at the expense of the appropriation for this act as provided in section twenty of this act."

Clearly, the intent of this statute was not to exclude alien seamen entirely—else why the inquiry as to his "qualifications for admission"?

Moreover, the seventh subdivision of section 4 of Act of 1906, as added by the Act of May 9, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4352), specifically provides that seamen who have served for three years on American vessels can be naturalized "without proof of the required five years' residence within the United States." That section further provides that the certificates of service on such vessels, showing good conduct, "shall be deemed prima facie evidence to satisfy all the requirements of residence within the United States." The statute does not say "some of the requirements," but "all the requirements." Moreover, section 4, subdivision 8, of the same act as amended, specifically provides:

"That every seaman, being an alien, shall, after his declaration * * * to become a citizen of the United States, and after he shall have served three years upon such

merchant or fishing vessels of the United States, be deemed a citizen of the United States for the purpose of serving on board any such merchant or fishing vessel of the United States, anything to the contrary in any act of Congress notwithstanding; but such seaman shall, for all purposes of protection as an American citizen, be deemed such after the filing of his declaration * * * to become such citizen."

It seems clear, therefore, that the intent of Congress was to make a separate class of seamen; to exempt them from the requirement of five years' residence; and to permit their naturalization when they could prove three years' honorable service on American ships, with not one word about the question as to whether or not their original entry was legal or illegal. Of course, under the act of 1917, quoted supra, alien seamen who landed could be deported. But if they were not deported within three years, but on the contrary served honorably and faithfully for that time in our merchant marine, they are clearly, under the very words of subdivision 7, entitled to become citizens, whether their original entry was legal or illegal. As Mr. Justice Field said in Re Ross, 140 U. S. 479, 11 S. Ct. 905, 35 L. Ed. 581:

"* * * While he was an enlisted seaman on the American vessel, which floated the American flag, he was, within the meaning of the statute and the treaty, an American, under the protection and subject to the laws of the United States equally with the seaman who was native born."

[3, 4] The next question propounded is: "Whether the period of seaman service claimed in order to bring the candidate within the purview of the seventh subdivision must be subsequent to his lawful entry into the United States, and to the filing of his declaration of intention?" This question, of course, assumes that there is no "lawful entry" until the actual issuance of the certificate of arrival. But if that is the date of "lawful entry," why nunc pro tunc? Why the statute providing that the seaman may be deported within three years, unless he is examined, and found fit to stay? Why, even, the provision that three years' service on American ships shall entitle him to citizenship? The issuance of the nunc pro tunc certificate, if it means anything, means that he is lawfully here; and to say that that is the date of his "arrival" involves an absurdity. Moreover, the government's contention would read into section 7 much that is not there. The government contends that a "literal reading" of

that section would permit a seaman to file his declaration of intention one day, and apply the next. But, in the first place, the courts are bound by a "literal reading," if that reading is clear. And in the second place, it is equally clear from the whole section that that is exactly what Congress intended. The real intention was to encourage alien seamen to take service on American vessels, and to reward that service with citizenship; secondarily, and equally important, was it to encourage alien seamen on American ships to become American citizens, not to hamper and discourage them.

Furthermore, section 2174, Rev. St. provided that for a seaman to secure citizenship, he must have served on an American vessel three years subsequent to his declaration. That was expressly repealed by chapter 69, § 2, 40 St. at L. 546. Could it be said that Congress did not have the subject in mind, when they passed an act repealing that section and another act omitting such an essential requirement of it?

[5] The practice of this court, moreover, has been to admit seamen, no matter when the three years' service occurred. So far as I know, this has never been challenged before by the government. On the contrary, the regulations of the Bureau itself (Ed. June 15, 1924, p. 53, subd. 7) make no such requirement. Of course, settled practice, and even governmental acquiescence, would not prevail against specific statutory provision, or relieve the court from the duty of statutory interpretation. But settled practice has always been considered as evidence of correct interpretation in accordance with that practice.

This is further borne out by the purpose as expressed in the Congressional Record:

"* * * The seventh subdivision has been prepared for the purpose of unifying the rule of exemptions extended to certain aliens who have received military training in the armies of the United States and the Philippine Islands as well as those serving in vessels of the United States government and the American Merchant Marine. * * *" Volume 56, Congressional Record, p. 6022, 65th Congress, 2d Sess.

To hold, therefore, that the service must be subsequent to the issuance of the certificate, or subsequent to the declaration of intention, would be to read into the statute something that Congress purposely omitted, and to nullify the clear purpose of the legislative body.

The third question, as to whether or not the provisions for certificates of arrival

apply to seamen generally, is not involved in this proceeding. Probably, under the Ness Case, supra, such a certificate would be required. Whether, however, such a certificate could be refused after a man had served three years on American ships, is another question, not necessary here to determine. (Of course, this opinion does not attempt to consider the effect of the quota law of 1924 [43 Stat. 153]).

[6] Lastly, the naturalization department makes certain suggestions as to its powers. I do not feel called upon to discuss those questions, except to negative the claim that such an examiner is a "master." His powers are clearly administrative, and not judicial in any sense. I am equally clear that such examiners have no power or authority to prevent a man from filing his petition under any circumstances.

Let the petitioner be admitted to citizenship.