## RIGHT OF NATURALIZATION WHERE A CERTIFICATE OF ARRIVAL IS NOT OBTAINABLE.

### Common Pleas Court of Cuyahoga County.

IN RE APPLICATION OF STEFAN KROCSKO TO REQUIRE WILLIAM T. SHOCKLEY, U. S. DIRECTOR OF NATURALIZATION OF THE CLEVELAND DISTRICT AND LOCAL REPRESENTATIVE OF THE HONORABLE JAMES J. DAVIS, SECRETARY OF THE DEPARTMENT OF LABOR OF THE UNITED STATES TO FURNISH A CERTIFICATE OF ARRIVAL FOR PURPOSES OF NATURALIZATION.

### Decided February 20, 1926.

*Naturalization—May Be Granted on Other Evidence Than Certificate of Arrival—Humane Considerations Compel Such a Practice.*

The former practice of the Secretary of Labor in permitting the issue, in naturalization proceedings, of *nunc pro tunc* certificates of arrival upon evidence other than actual verification of records of arrival at the port of entry, was a legal, humane, and absolutely necessary one for properly carrying into effect the provisions of the naturalization act, and a later opinion of the Solicitor of the Department of Labor should be disregarded.*

*George A. Green*, for Relator.
*Wm. T. Shockley*, Respondent *in Propria Persona.*

PEARSON, J.

This is a petition filed by Stefan Krocsko, an alien, for a writ of mandamus requiring the Honorable James J. Davis, Secretary of Labor of the United States through the Local Federal Examiner, William T. Shockley, Cleveland, Ohio, forthwith, to consider as a basis for issuing a

---

* In the case at bar an alternative writ of mandamus was granted, ordering the Secretary of Labor through the local Federal Examiner to proceed to consider, as a basis for issuing a certificate of arrival, other competent evidence than the mere failure of the Government to verify such a record at the port of entry, taking into consideration among other things proof of a continuous and uninterrupted residence in the United States, the information furnished by passport, head tax receipts, etc., and testimony of fellow passengers, friends and relatives as to the actual circumstances of **arrival.**

certificate of arrival other competent evidence tending to show the time, place, and manner of petitioner's entry into the United States, than that which may be obtained from an investigation of immigration records only.

The allegations of the petition are: That relator resides in the city of Cleveland, Ohio, and has resided therein continuously for a period of 9 years, and in the United States of America continuously for over a period of 15 years; that he is thirty-six years of age, was born at Pstrina, Sariska, Czechoslovakia and emigrated from Bremen, Germany, to the United States, arriving at Baltimore on or about the 6th day of November, 1910; that his entry into the United States of America was legal and that he complied with all immigration laws and regulations of the United States of America in effect at the time of his entry; that he is a married man, the father of six children all American citizens by birth and that he has been continuously employed while residing in the United States; that he is desirous of becoming a citizen of the United States, and that on or about the 1st day of December, 1925, he duly made application for a certificate of arrival to the Honorable Secretary of Labor at Washington, D. C., through the said William T. Shockley, respondent herein, he being the proper person required by law for the issuance of said certificate; that said respondent informed him that he was unable to verify his record of landing at the port of entry and refused to issue a certificate of arrival; that in refusing to issue said certificate of arrival without considering other evidence than the failure of the Department of Labor to locate his record of arrival as disclosed on the manifests of the arriving steamer, is contrary to law and against the just rights of relator and particularly the Act of Congress of June 29, 1906, pertaining to naturalization (being 34 Statute L, part 1, page 596), and the acts amendatory thereto, and will work a hardship to him as his declaration of intention expires on the date hereof being the last day for which said declaration of intention may be issued for purposes of filing a petition for a certificate of naturalization; that further delay in obtaining a certificate of arrival would defeat relator's desire ever to become a citizen of the United States,

jeopardize his position of employment, and likely cause him irreparable injury; that he is without remedy unless and until a writ of mandamus issue out of this court, requiring the said Secretary of Labor, respondent herein, to issue a certificate of arrival forthwith according to law; wherefore he prays the issuance of such writ.

The court, in this action, is asked for an interpretation of that portion of the Naturalization Act of June 29, 1906, which reads as follows:

*"At the time of filing his petition there shall be filed with the clerk of court a certificate from the Department of Labor, if the petitioner arrived in the United States after the passage of this act, stating the date, place, and manner of his arrival in the United States."*

Can this section logically be so construed as to prevent the Department of Labor from legally issuing such a certificate where the time, place and manner of arrival as alleged by the petitioner cannot be verified at the port of entry by officials of the government? In other words, must the department in establishing proof of an immigrant's arrival, so far as it may affect his naturalization, confine the evidence it will consider to the immigration records of the government? Ever since the enactment of the aforesaid Naturalization Act of 1906, the Secretary of Labor has answered this question in the negative and has freely and without discrimination issued certificates of arrival to applicants for citizenship even though their records of arrival could not be verified at the port of entry. Almost coincidental with the enactment of the last Quota Immigration Act by Congress, the former practise of the department was called into question and the Solicitor for the Department of Labor upon reference to him for an opinion, declared the practise as then observed contrary to law. In view of this decision, thousands of honest, law abiding aliens now residing in the United States, will be forever debarred from naturalization until some redress is obtained through the remote and uncertain channels of Congressional action. Since this question has been referred to the solicitor for an opinion, and since it has also been referred to the Committee of Immigration

and Naturalization of the House for legislative sanction, and since a member of this committee has already drafted a bill changing the wording of the statute to conform with the opinion of the solicitor, it cannot be denied that a judicial question, pure and simple, is at this time being presented to the court for an answer.

In the instance at bar the relator is forced to continue in a state of dual citizenship with his family, the greater part of which is made up of American citizens by birth. That Congress never intended such a cruel and artificial consequence of its Act is amply shown by facts gathered from a study of the legislative history of the law of 1906, and an examination of subsequent independent naturalization acts dealing with the family relationship. For instance prior to September 22, 1922, the wife of a naturalized citizen automatically became a citizen of the United States through the naturalization of her husband, and even after the passage of the Independent Citizenship Act, the wife was granted certain privileges not accorded other petitioners for naturalization in order that she in the simplest and easiest possible manner, might assume the political equality of her husband.

To limit petitioners to those who could obtain a verification of their record of arrival at the port of entry would deny the right of thousands to bring their wives and children to them in the United States under the recent Quota Immigration Act. Congress never meant to deal such a staggering blow at the sanctity of the home, the foundation of all society, the basis of all government. And the Secretary of Labor in May, 1925, promptly rescinded an order he had issued in February of the same year not unlike the present one in its sinister consequences, namely that his examiners should object to the petition of an alien whose wife was residing in the old country. It was so manifestly unfair that the department itself without court action retracted after naturalizing courts quite generally refused to honor it. Another order issuing from the Honorable Secretary of Labor in August, 1924, requiring applicants for a first paper to produce a certificate of arrival, transcended the authority reposed in him by the Naturalization Act to such an extent that several courts by judi-

cial decrees declared it manifestly unfair and directed their clerks to disregard it. This Honorable Court rendered such an opinion, *In re Szabo*, Nisi Prius, Ohio Legal Bulletin, Dec. 29, 1924.

Perhaps the one decision which can throw any light on the case at bar will be found in *Re Linklater*, Volume 3 (2d) No. 5 of the Federal Reporter, page 691. Here, Judge Partridge, District Judge of the Northern District of California U. S. Court says:

"The settled practise of an administrative officer charged with the enforcement of a statute may be considered as evidence of a correct interpretation, though not entitled to prevail against specific statutory provisions."

This court cites various authorities to show that the Naturalization and Immigration laws are not so interdependant, that, because an alien has entered this country in violation of the immigration laws, he should not be admitted to citizenship by virtue of the naturalization laws after the proper judicial action contemplated by the latter has been had. It in effect states that the immigration laws by their provisions recognize that immigrants come to the United States other than by a port of entry or in the legal channels prescribed by said laws and the general rulings of the department. This is plain from the provision that within a period of three years they may be deported. That a man may have come into this country in violation of the immigration laws is a fact perhaps to be considered by the court in reaching the conclusion required before the alien may be admitted to citizenship, but it is not a ground for his exemption from citizenship or else it would have been so provided in the Acts of Congress. Citing: Judge Orr of the Western District of Pennsylvania, *In re Schmitt*, 207 F., 678; Judge Thompson of the Eastern District of Pennsylvania, *In re McPhee*, 209 Fed., 143.

In *U. S.* v. *Ness*, 245 U. S., 319, where the Supreme Court of the United States discussed the four objects of the certificate of arrival, it would seem that Justice Brandeis touched upon this precise question when he said that one of its purposes was to aid in ascertaining whether

the petitioner was in any one of the classes of aliens who were excluded from admission by the Immigration Laws. "Aid in ascertaining" that fact however is far different from saying that the fact alone by virtue of its existence would prevent naturalization in all cases.

The purposes of the certificate of arrival as set forth by Justice Brandeis are as follows:

1. To aid in ascertaining whether the petitioner is within the classes of aliens who should be excluded under the Immigration Laws.

2. Whether he is among those who are excluded from naturalization, under Section 7 of the Naturalization Act, for political beliefs or practises.

3. Whether he is the same person whose declaration of intention to become a citizen is also attached to the petition as required by law.

4. Whether the minimum period of five years continuous residence prescribed by the naturalization law has been complied with.

It is the opinion of the court that the Commissioner of Naturalization in his annual report for the fiscal year ending 1922, on page 15 thereof, fairly and frankly describes the function of the certificate of arrival in the naturalization process.

"The only purpose of the requirement is to show that the candidate for citizenship has not in his initial step evaded the law of the land but if he has, ignorantly or knowingly or willflly, what conclusive evidence of unfitness would that fact imply that is not affirmatively and fully met and overcome by the testimony of at least two credible witnesses, citizens of the United States that they have personally known him for five years, and upon their observation, on solemn oath declare him to be in every respect qualified to be an American citizen. For these reasons the Naturalization Bureau urgently recommends that the certificate of arrival be abolished as useless, obstructive and expensive."

The court has carefully examined a number of volumes containing petitions already filed with the clerk to which are attached certificates of arrival, and finds that these certificates have been issued in various forms: some are printed; others, mimeographed; some are signed, others,

not; some appear in the form of a telegram; some are issued by officials of the Immigration Department; others by officials of the Department of Naturalization. The court has also discovered from this examination that prior to the ruling challenged by this action the exact words of the statute, namely, *"This is to certify that * * * the following named alien * * * arrived at the port indicated on the date, and in the manner described below,"* were employed on said certificate, and that subsequent to the ruling in question the wording was changed to read as follows: *"This is to certify that the following named alien was legally admitted to the United States on the date, and in the manner described below."* It will be observed that the Honorable Secretary of Labor has not only read into the law something totally absent therefrom, but has gone so far as to print and publish a conclusion of law, neither expressed nor intended by Congress. The court believes this an unwarranted invasion of the legislative field of the government by an officer of the executive branch.

To proclaim that actual verification of an alien's entrance in the United States must be obtained from records gathered from the manifests of ocean liners, and from no other source would in effect deny any significance to the adage "To err is human." Such a pronouncement would mean that government officials can make no mistake, and yet there has been brought to the attention of the court in this case appalling instances of clerical errors committed by government officials. Applicants have already been admitted to citizenship in the courts of this city with the proper certificate of arrival furnished, although months thereafter a statement has been received from the Department of Labor that a record of arrival could not be located at the alleged port of entry, this despite the fact that on a previous application a record had been located and verified perhaps by some other clerk more circumspect in his duties.

It is a well-known fact that clerical errors and defects for which the applicant is in no way responsible will, if the present practise of the labor department is upheld, continue to deny thousands of aliens the privilege of citi-

zenship.  Having entered the country at the time when they were illiterate, of tender age, or wrote with difficulty only in a foreign script, unintelligible to inexperienced clerks who were likely to make erroneous transcriptions, they have very little notion of the way their names are spelled on the government records.

The relator entered the United States prior to the Immigration Act of 1917 when no literacy test was imposed, and the records on manifests of arriving vessels were copied in long-hand with the names of many passengers spelled incorrectly and transcribed by governmental clerks through phonics.  It is to be presumed that countless mistakes do arise from the transcription of names from the Cyrillic alphabet to the Arabic, and from characteristic ideograms of Eastern races to our own system of letter arrangement.

The Constitution of the United States, Article 1, Section 8, provides that Congress may establish a uniform rule of Naturalization.  The Act of 1906 was presumably passed better to accomplish and perfect this end.  The present ruling of the Department of Labor is totally out of harmony with this Act, in that clerical errors by governmental officials make it impossible for all prospective citizens to become naturalized on an equal basis.

The court is of the opinion that the former practise of the Secretary of Labor in issuing *nunc pro tunc* certificates of arrival upon evidence other than actual verification of records of arrival at the port of entry, was a legal, humane, and an absolutely necessary one, for properly carrying into effect the provisions of the Naturalization Act.  The writ may issue and it is therefore ordered in the case at bar that the Secretary of Labor through the local Federal Examiner, proceed to consider as a basis for issuing a certificate of arrival, other competent evidence than the mere failure of the government to verify such a record at the port of entry, taking into consideration among other things proof of a continuous and uninterrupted residence in the United States, the information furnished by passport, head-tax receipts, etc., and testimony of fellow passengers, friends and relatives as to the actual circumstances of arrival.