## In re WIEG.

District Court, S. D. Texas, at Houston.
January 21, 1929.

No. 3391.

Wolters, Blanchard, Woodul & Wolters and J. F. Wolters, all of Houston, Tex., for plaintiff.

Howard L. Field, Jr., Naturalization Examiner, for the United States.

HUTCHESON, District Judge. In this case the undisputed facts are:

Frank Wieg was born in Germany, on September 24, 1889. In the early part of 1924 he applied to the American consul at Hamburg, Germany, for a quota immigration visa, with the intention of coming to the United States for the purpose of permanent residence. He was informed by the consul that no such visa could be issued to him at that time, inasmuch as the German quota was filled. Wieg then applied for a visa to permit him to enter the United States as a visitor. This visa was issued, and on March 10, 1924, he arrived at the port of New Orleans, La., and was admitted by the immigration authorities in the status of a visitor. He filed a declaration of intention to become a citizen in the Galveston county district court, Galveston, Tex., on March 26, 1924. During the summer of 1924 he served aboard the steamship Worden and the steamship Truxtun, of Nicaraguan registry, as a messman for at least two voyages to foreign ports; each voyage consuming approximately two weeks for the round trip. On December 14, 1924, he enlisted as a private in Headquarters troop, 56th Cavalry Brigade, National Guard of the United States, at Houston, Tex., and was honorably discharged on December 16, 1927 upon the expiration of his enlistment.

On April 12, 1928, he was examined by a representative of the Bureau of Naturaliza-

tion as required by subdivision 7 of section 4 of the Act of June 29, 1906, as amended (8 USCA § 388), and filed a petition for naturalization under the provisions of that statute in the United States District Court, Houston, Tex., predicated upon his declaration of intention and honorable discharge from the National Guard. Filed with and made a part of his petition was a certificate of arrival from the Department of Labor, stating the date, place, and manner of his arrival in the United States on March 10, 1924, and bearing the indorsement, "Admitted for six months visit and business, not permanently admitted."

Upon these facts the government opposes the admission of the alien on three grounds:

(1) That it affirmatively appears that the alien has not resided in the United States for five years next preceding his admission.

(2) That the alien, having served upon a vessel of foreign registry during the period of his claimed residence, is by the proviso of May 9, 1918, barred from admission; and

(3) That the petitioner has never had a legal residence in the United States.

To the first objection the petitioner replies that he brings his petition under the Act of May 9, 1918 (8 USCA § 388), and specifically under that provision of it which provides "Any alien * * * of the age of 21 years * * * who has enlisted * * * in * * * the National Guard * * * may, on presentation of the required declaration of intention petition for naturalization without proof of the required 5 years' residence within the United States if, upon examination by the representative of the Bureau of Naturalization, in accordance with the requirements of this subdivision, it is shown that such residence cannot be established."

That such section works an exception to the operation of section 2170, Revised Statutes (8 USCA § 361), and, in the instance of such exception, makes unnecessary the proof of 5 years' residence, and cites in support of this view In re Richardson (D. C.) 21 F.(2d) 181; In re Monson (D. C.) 10 F.(2d) 560; In re Ellingsen (D. C.) 300 F. 225; In re Linklater (D. C.) 3 F.(2d) 691.

Against this position and the authorities cited, the government cites In re Sandstrom (D. C.) 14 F.(2d) 675; In re Olsen (D. C.) 18 F.(2d) 425. All of these cases arose under the seventh subdivision. The majority of the petitioners were alien seamen; two of them however, were of the same character as the present case, and in one of them, In re Richardson, the District Court of Oregon holds 5 years' residence not necessary. In the other, In re Sandstrom, the District Court of Virginia holds that it is.

A critical examination of the statute under discussion discloses ambiguities sufficient to account for, and according to the point of view adopted sustain, either line of decisions. Nowhere in the statute is there an express statement that the general requirement of proof at the trial of 5 years' residence may be dispensed with. On the contrary, the only references to the 5 years are procedural: (1) That the applicant *may file his petition without proof of the required 5 years*, if it is shown to the representative of the Bureau of Naturalization that such residence cannot be established; and (2) that the honorable discharge *shall be deemed prima facie evidence to satisfy all the requirements of residence.*

Now the courts which hold the 5 years necessary have reasonably declared that section 2170, requiring 5 years, is universal, and that this is enforced by subdivision 4, of section 4 of the act of 1906 (8 USCA § 382), that it shall be made to appear to the satisfaction of the court that the applicant has resided continuously within the United States for 5 years; that only in the event of a direct repeal, or repeal by implication of necessity, can these provisions be ignored; and that, so far from the subdivision under which this petition is filed effecting such resort, its language is carefully worded to avoid it, by providing, not that the petitioner shall be *admitted* without proof of 5 years, but merely that he may be entitled to *file his petition without* proof, and, further, by providing, not that his certificate of discharge *shall be conclusive,* but, on the contrary, shall be *prima facie* evidence of his compliance with the residence requirements.

The courts, on the other hand, which hold that this subdivision obviates the proof of 5 years' residence, point to the language of the subdivision, that the petitioner may, without proof of the required 5 years' residence, file his petition, if it is shown that such residence *cannot be established,* as having only one permissible and reasonable meaning, to wit, that an alien who has served in the army, but cannot prove his 5 years' residence, may, because of that service, petition for and obtain his citizenship; that to permit him to petition when his 5 years' residence cannot be *established,* only to *deny him admission on the trial,* would be a trifling and a mockery.

In view of the fact that the petition will be denied upon other grounds, I have concluded not to add my own uncertain note to the confusion already existing in the author-

ities on this point, and to reserve my opinion on it for some case where that opinion is necessary.

■ To the second objection of the government, that the petitioner served aboard vessels of foreign registry, the petitioner replies (1) that the service was insignificant and immaterial; (2) that it has no application here, because the petitioner is not obligated to prove the 5 years' residence; and (3) that the matter has been decided adversely to the government by the Circuit Court of Appeals of this circuit, and, as far as this court is concerned, is concluded.

I agree with the petitioner on the first point, that the fact that the petitioner took two voyages on vessels of Nicaraguan registry, each voyage lasting two weeks, would be de minimis and trivial, and of too small import to have any effect upon the rights of the petitioner in the case at bar. Whether, therefore, petitioner is right in his further claim that the sea service invoked against him is inapplicable to his case, because under the subdivision his certificate of discharge is made prima facie evidence of compliance with the condition of residence, or upon his third point, that the matter has been decided adversely to the government in this circuit, it is not necessary for me to decide.

■ With the third objection of the government, that petitioner has never acquired any legal residence in the United States which would form the basis of his admission to citizenship, I entirely agree. Upon that point the authorities are in some conflict, with I think, the weight of well considered authorities in favor of the government. But, apart from the authorities, I think a proper construction of the existing statutes themselves leaves no other conclusion possible than that petitioner has not shown himself entitled, under the facts in this case, to a decree of citizenship in this country.

Many cases have discussed the question of the effect of illegal entry, and a wavering line of decisions has manifested itself in the lower federal courts on this point. At first there was an apparent liberality of view, illustrated in In re Schmidt (D. C.) 207 F. 678; In re McPhee (D. C.) 209 F. 143; In re Linklater (D. C.) 3 F.(2d) 691.

In these cases, particularly in In re Schmidt, it was suggested that there was no such interdependence between the naturalization laws and· the immigration laws as to deprive an alien of citizenship, because he has entered the country in violation of the immigration laws, if he has complied strictly with those governing naturalization; whereas, in later decisions, especially since the force and effect of the statute making a certificate of arrival a prerequisite of naturalization has been made clear in United States v. Ness, 245 U. S. 319, 38 S. Ct. 118, 62 L. Ed. 321, the trend of decisions has been the opposite, and is now practically uniform that an illegal entry cannot be made the basis for citizenship.

Cases illustrative of this view are the Petition of Connal (D. C.) 8 F.(2d) 374; In re Jensen (D. C.) 11 F.(2d) 414; In re Kempson (D. C.) 14 F.(2d) 668; In re Reader (D. C.) 21 F.(2d) 877; In re Demanis (D. C.) 21 F.(2d) 876; In re Longo (D. C.) 21 F.(2d) 968; In re Olsen (D. C.) 18 F. (2d) 425. In this last case a distinction which I think illogical, but which shows the trend, is made between the status of persons arriving before 1921 and those arriving after.

Against these later decisions petitioner cites only one, In re Patience (D. C.) 14 F. (2d) 624, which is either incorrectly decided, or, if correctly decided on its own facts, is no authority for the case at bar. In the case at bar it is perfectly plain that, though petitioner obtained only a temporary foothold in the United States, which he was in duty bound to surrender at the expiration of his temporary permit, he went immediately about to make that temporary footing permanent; for, arriving in New Orleans on March 10, under a permit expressly stating that he was not permanently admitted, he filed in Galveston on March 26, 1924, a declaration to become a citizen. Thereafter, while in the United States unlawfully and subject to deportation, because his permit had expired, he enlisted in the National Guard and followed the expiration of that enlistment with this petition for naturalization.

Without other animadversion upon these proceedings than their own relation effects, it seems perfectly plain to me that such flagrant and open breach of his agreement, and such a deliberate attempt to evade and defeat the laws of the country into which he had obtained temporary entrance, do not constitute such a residence as to be a basis for admission; for the facts effectively and completely rebut the prima facie effect as proof of residence, of his certificate of honorable discharge, and leave petitioner standing before the court wholly devoid of legal residence.

This being so, his petition for citizenship must be denied.