**Petition of GISLASON.**
No. 239035.

District Court, D. Massachusetts.
Oct. 1, 1942.

P. Fraticelli, Edward Nappan, and Max P. Glassman, all of Boston, Mass., for petitioner.

Maxwell Lambe, of Boston, Mass., for Immigration and Naturalization Service.

FORD, District Judge.

This is a petition for naturalization filed by one Gislason, a native of Iceland, under the Nationality Act of 1940 (October 14, 1940, c. 876, Title I, Subchap. III, 54 Stat. 1137, 1150), Section 325(a) (b), 8 U.S.C.A. § 725(a, b). The section reads in part, as follows:

"Section 325 (a). A person who has served honorably or with good conduct for an aggregate period of at least five years * * * (2) on board vessels of more than twenty tons burden, * * * which are not foreign vessels, and whose home port is in the United States, may be naturalized without having resided, continuously immediately preceding the date of filing such person's petition, in the United States for at least five years, and in the State in which the petition for naturalization is filed for at least six months, if such petition is filed while the petitioner is still in the service on a reenlistment, reappointment, or reshipment, or within six months after an honorable discharge or separation therefrom.

"(b). The provisions of subsections (b), (c), (d), and (e) of section 324 [8 U.S.C. A., Section 724] shall apply to petitions for naturalization filed under this section, except that service with good conduct on vessels described in subsection (a) (2) of this section may be proved by certificates from the masters of such vessels."

Section 324(b), 8 U.S.C.A. § 724(b), enumerates the exemptions to which a petitioner under Section 325 is entitled and reads in part, as follows:

"Section 324 * * * (b). A person filing a petition under subsection (a) of this

section shall comply in all respects with the requirements of this chapter [subchapter] except that—

"(1) No declaration of intention shall be required;

"(2) No certificate of arrival shall be required;

"(3) No residence within the jurisdiction of the court shall be required; * * *."

The petitioner illegally entered this country as a deserting seaman in 1928, and on December 30, 1941, made a lawful entry from Canada. He claims to have served the required number of years on fishing vessels at various intervals during the period 1931–1942, and to support this contention the petitioner has filed certificates of masters of various vessels. The petitioner has not taken out a declaration of intention but relies upon Section 325, which exempts him from such requirement.

The chief naturalization examiner submits that the questions to be determined by this court are (1) the eligibility of the petitioner to avail himself of Section 325 and (2) the sufficiency of the petitioner's certificates to satisfy the requirements of said section. The examiner contends that because Gislason performed his service as a fisherman on fishing vessels, he cannot avail himself of the section; and that because a good portion of the petitioner's service occurred prior to his lawful entry, such service cannot be accepted as satisfying the provisions of the section. For these and other reasons to appear later, the chief examiner requests that the petition be denied.

To determine adequately the questions involved, it is necessary to probe into the legislative history of the pertinent statutory provisions.

The Act of June 29, 1906, c. 3592, 34 Stat. 596, established a Bureau of Immigration and Naturalization, and provided for a uniform rule for the naturalization of aliens. Before this act was passed the naturalization laws were not concerned with how a person entered the country and frauds in naturalization were practiced. The Act of 1906 provided for a

declaration of intention to become a citizen, § 4, First subdivision, 8 U.S.C.A. § 373, and a certificate of arrival, § 4, Second subdivision, 8 U.S.C.A. § 380. The act contained no provisions with respect to the naturalization of alien seamen similar to those in Section 325 of the Nationality Act of 1940. Nothing of this sort appeared upon the statute books until 1918.[1]

The Seventh subdivision of Section 4 of the Act of 1906, as added by the Act of May 9, 1918, c. 69, 40 Stat. 542, repealed these laws, and provides: "* * * any alien, * * * of the age of twenty-one years and upward, * * * who has served for three years on board of any vessel of the United States Government, or for three years on board of merchant or fishing vessels of the United States of more than twenty tons burden, and while still in the service on a reenlistment or reappointment, or within six months after an honorable discharge or separation therefrom, * * * may, on presentation of the required declaration of intention petition for naturalization without proof of the required five years' residence within the United States if upon examination by the representative of the Bureau of Naturalization, in accordance with the requirements of this subdivision [sections 388 to 390, and 392 to 394 of this title], it is shown that such residence can not be established. * * * The certificate of service showing good conduct, signed by a duly authorized officer, or by the masters of said vessels, shall be deemed prima facie evidence to satisfy all of the requirements of residence within the United States * * *." 8 U.S.C.A. §§ 388, 393.

The amendment of 1918 did not change the requirement of filing a certificate of arrival.

The importance of the amendment of 1918, as concerns the matter before this court, lies in the fact that it expressly extends its provisions to aliens who have served for three years on board *fishing vessels*. If Gislason had filed his petition under the Act of 1918, the chief examiner's argument that the petitioner being a fisherman cannot avail himself of the act would be unfounded. That act expressly extended its provisions to fishermen.

---

[1] There were, however, somewhat similar laws relating to the naturalization of aliens in the service of the Navy, Marine Corps, Revenue Cutter Service, and the Navy Auxiliary Service. R.S. § 2166, July 26, 1894, c. 165, 28 Stat. 123; R.S. § 2174, June 30, 1914, c. 130, 38 Stat. 392. (Both were repealed by Act of May 9, 1918, 8 U.S.C.A. §§ 354, 359, 388 et seq.)

■ On March 2, 1929, an act was passed to supplement the naturalization laws, c. 536, 45 Stat. 1512. Section 6(c)(d) of that act reads as follows:

"(c) So much of the seventh subdivision of section 4 of such Act of June 29, 1906, as amended, as reads 'or for three years on board of merchant or fishing vessels of the United States of more than twenty tons burden' is amended to read as follows: 'or for three years on board vessels of more than twenty tons burden, whether or not documented under the laws of the United States, and whether public or private, which are not foreign vessels.'

"(d) So much of such subdivision as reads 'without proof of the required five years' residence within the United States if upon examination by the representative of the Bureau of Naturalization, in accordance with the requirements of this subdivision it is shown that such residence can not be established' is amended to read as follows: 'and may be naturalized without complying with the requirements of residence within the United States and within the county' ".

This act omits specific mention of merchant and fishing vessels and substitutes "on board vessels of more than twenty tons burden". That this change was not made with the intent to exclude fishing vessels is readily seen upon examining the following conference report to the House of Representatives:

"The managers on the part of the House at the conference on the disagreeing votes of the two Houses on the amendment of the Senate to the bill (H.R. 349) to supplement the naturalization laws, and for other purposes, submit the following written statement in explanation of the effect of the action agreed upon by the conferees and recommended in the accompanying conference report;

"The House Bill changes the method of making proof of residence and good moral character by the petitioners for naturalization. The Senate amendment strikes out the text and inserts a number of provisions relating to naturalization. These are:

\* \* \* \* \* \*

"(3) Another provision extends the privilege of naturalization of alien seamen serving three years on board merchant or fishing vessels of the United States of more than twenty tons burden, so as to include service on all vessels of more than twenty tons burden which are not foreign vessels, the principal class thus included being yachts and certain harbor boats \* \* \*. The House agrees to these provisions".

Obviously, the change was made with the intent to give "vessels" a broader scope than "merchant or fishing vessels". Now, other vessels of more than twenty tons *as well as* merchant and fishing vessels come within the meaning of the act. Clearly, the chief examiner's argument that fishermen cannot avail themselves of Section 325 of the Act of 1940 has no basis. Section 325 of the Act of 1940 is merely a reenactment of the Act of 1929 as concerns the class of aliens who come within the meaning of the act.

The remaining question to be considered is whether or not the certificates relating to service prior to the petitioner's legal entry on December 30, 1941, can be used in computing his five years' service. The cases on this point all came up before the enactment of the Nationality Act of 1940. They seem to hold that an illegal entry is immaterial and that service as a seaman while illegally in the country is sufficient to bring the alien within the purview of the acts prior to that of 1940. In re Linklater, D.C., 3 F.2d 691, 694; In re Van Der Schuur, D.C., 20 F.Supp. 42; but see In re Olsen, D.C., 18 F.2d 425, 426, relying on United States v. Ness, 245 U.S. 319, 322, 38 S.Ct. 118, 62 L.Ed. 321, which latter case held that the certificate of arrival is an essential prerequisite to a valid decree of naturalization.

The court, in In re Linklater, supra, 3 F.2d at page 694 said: "It seems clear, therefore, that the intent of Congress was to make a separate class of seamen; to exempt them from the requirement of five years' residence; and to permit their naturalization when they could prove three years' honorable service on American ships, with not one word about the question as to whether or not their original entry was legal or illegal".

The Linklater case held that an illegal entry was not fatal, even though the statute required the filing of a certificate of arrival.

■ The Nationality Act of 1940, under which Gislason filed, exempts the petitioner from filing a certificate of arrival. Section 324(b) (2). This obviates the difficulty which the court in In re Olsen, supra, thought necessitated a holding to the

50

effect that the petitioner's entry must be lawful. The present act is clearly drawn. All that is required is five years continuous service with good conduct. No declaration of intention or certificate of arrival is required and the act specifically provides that residence is not necessary. Section 325(a). Section 324(b) (4) reads:

"Such petitioner may be naturalized immediately if the petitioner be then actually in any of the services prescribed in subsection (a) of this section, and if, before filing the petition for naturalization, such petitioner and at least two verifying witnesses to the petition, who shall be citizens of the United States and who shall identify petitioner as the person who rendered the service upon which the petition is based, have appeared before and been examined by a representative of the Service."

No mention is made here of legal or illegal entry. It seems apparent in view of the authorities cited above as to the law before the 1940 Act was enacted and because under the present act neither residence—if the service is continuous—nor a certificate of arrival are required, that service prior to Gislason's legal entry may be computed in establishing his five years service.

There remains, however, a further question which must be resolved in order fully to determine the problem before the court. Section 325(b) of the Act of 1940, 8 U.S. C.A. § 725(b), has made the provisions of subsections (b), (c), (d), and (e) of section 724 applicable to petitions for naturalization filed under this section.

■ Section 324(c), 8 U.S.C.A. § 724 (c) provides:

"In case such petitioner's service was not continuous, petitioner's residence in the United States and State, good moral character, attachment to the principles of the Constitution of the United States, and favorable disposition toward the good order and happiness of the United States, during any period within five years immediately preceding the date of filing said petition between the periods of petitioner's service * * * shall be verified in the petition filed under the provisions of subsection (a) of this section, and proved at the final hearing thereon by witnesses, citizens of the United States, in the same manner as required by section 709. Such verification and proof shall also be made as to any period between the termination

of petitioner's service and the filing of the petition for naturalization."

This simply means that if the petitioner's service is not continuous the petitioner must prove his residence in the United States during all intervals or gaps in his service within five years immediately preceding the date of filing his petition.

■ This raises the question: What is meant by "continuous" service? Continuous means without cessation. Continuous service is uninterrupted service. If there are gaps in the service, it cannot be continuous. It is not too difficult to determine whether or not there is a gap. If the alien is in the employ of a master, he is in service. It matters not if the vessel is in dock for repairs, or after a haul has been brought in; he is still in service. However, if the alien is discharged for any reason at all, whether for cause or not, there is a gap in the service if any substantial period of time elapses between the discharge and subsequent employment. In this event service is not continuous. The same holds true if the petitioner leaves the vessel and employment of his own accord. In other words, the service must be practically uninterrupted to be continuous. Whether the petitioner had served continuously or not is a question of fact for the court to determine.

■ The service upon which the petitioner relies started January, 1931, and was completed on April 10, 1942. But during this time there were periods during which the petitioner was not in the employ of any master or shipowner. The whereabouts and work of the petitioner during these periods are unexplained. There are seven such periods in all. (1) November, 1933—June 1935; (2) April, 1936—May 20, 1936; (3) July 29, 1936—July 27, 1938; (4) October 1, 1938—December 1, 1938; (5) April 5, 1939—August 1, 1940; (6) April 14, 1941—May 12, 1941; (7) December 23, 1941—April 10, 1942. The unexplained periods range in length of time from twenty days to two years. Whatever the true test of continuous service may be, it seems an inescapable conclusion that this petitioner has not served continuously. The two-year break and the year and seven months break point decisively to noncontinuous service.

As the service in Gislason's case is not continuous, the petitioner's residence in the United States and State during the

gaps in the period within five years immediately preceding the filing of the petition must be proved in the same manner as required by 8 U.S.C.A. § 709; also, the same proof is required for the period between the termination of the petitioner's service and the filing of the petition for naturalization. 8 U.S.C.A. § 724(c).

If residence must be verified and proved, the question of legal or illegal entry becomes important in this case. Residence, for the purpose of naturalization, must be based upon a lawful entry with respect to those arriving in the United States after June 29, 1906, 8 U.S.C.A. § 729. An alien who enters this country unlawfully after that date cannot establish residence thereafter as a basis for application for citizenship. (See in this connection Section 328 of the Nationality Act of 1940, 8 U.S.C.A., Section 728). Kaplan v. Tod, 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed. 585; United States v. Goldstein, D.C., 30 F. Supp. 771, 773; United States v. Parisi, D.C., 24 F.Supp. 414, 419; In re Scriver, D.C., 9 F.Supp. 478, 480.

Thus, if the service is not continuous, a petitioner who is in the country illegally when he files his petition and arrived after June 29, 1906 cannot become a citizen under the provisions of Section 325 of the Nationality Act of 1940, because he would be unable to prove residence during the gaps.

The petitioner in this case has not served continuously for five years. His service was performed during the period 1931–1942 after entering this country illegally in 1928. It is true that the petitioner made a lawful entry in 1941, but, because of the illegal presence in the United States prior to that date, he cannot prove residence during the gaps which occurred during the period commencing July 14, 1937, and ending December 30, 1941, the date of his legal entry, and which period, of course, is within the five-year period before the date of filing his petition.

Assuming, without deciding, that the certificates of service from the masters are adequate and sufficient proof of five years aggregate service with good conduct, the petition is denied for the reasons set forth above.

It is contended that there are few seamen, especially fishermen, who can pass the continuous service test as set out above and that it is very difficult to prove residence for short periods. This may be true. But until Congress sees fit to remove the requirement, a seaman who has not served continuously must prove the gaps as provided by Section 324(c). This is not unreasonable. There are other avenues of approach to citizenship. Section 325 of the Nationality Act of 1940 has made it much easier than before for an alien to become naturalized, but it cannot be said that Congress has let down the bars completely. There are still requirements to be satisfied; and until they are, this alien's petition for naturalization must be denied.

